Opinion issued March 18, 2004
 
















In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00490-CV




DAYSTAR RESIDENTIAL, INC. AND SHILOH TREATMENT CENTER,
Appellants

V.

MARK W. COLLMER, Appellee




On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause No. 0257671




O P I N I O N
          Appellants, Daystar Residential, Inc. (Daystar) and Shiloh Treatment Center
(Shiloh), appeal the trial court’s granting of summary judgment in favor of appellee,
Mark Collmer. Daystar and Shiloh present three issues for this appeal: (1) whether
the doctrine of absolute privilege in regard to judicial immunity applies to
disparaging statements made by Collmer and published in newspapers before his
filing of a lawsuit against Daystar over the Latasha Bush death; (2) whether the
doctrine of absolute privilege in regard to judicial immunity applies to disparaging
statements made by Collmer and published in newspapers as to Shiloh, when Shiloh
was not a party to the Latasha Bush litigation; and (3) whether the trial court erred by
refusing appellants’ discovery request before ruling upon Collmer’s amended motion
for summary judgment. We affirm.
BACKGROUND
          Daystar and Shiloh share a parent company, Behavior Training Research, Inc. 
On February 27, 2002, Latasha Bush, a mentally disturbed 15-year-old girl, died at
Daystar Residential Treatment Center. Her death was ruled a homicide by the Harris
County medical examiner. Stephanie Duffield, a resident of Shiloh had died in 2001. 
Her death was originally determined to be an accident, but that determination was
reconsidered after Bush’s death.
          Bush’s mother hired Mark Collmer to represent her in legal actions relating to
her daughter’s death. Collmer was interviewed by the Houston Chronicle and the
Brazosport newspaper, The Facts, for articles about the investigation of the deaths at
the Behavior Training Research facilities. The article in the Houston Chronicle
included the following paragraphs:
Mark Collmer, an attorney hired by [Bush’s] mother, said he will file a
lawsuit alleging gross negligence this week in Brazoria County.
 
Collmer said the autopsy revealed hemorrhaging in the girl’s eyes,
which he said “usually comes from strangulation,” as well as bruises
around her neck and on her back, which he said apparently were
inflicted during the basket hold restraint.
 
“It means you were killed because you were held down” he said of the
autopsy. “It’s hard to breathe with three people sitting on you.”

The article in The Facts included the following paragraphs:
 
Mark Collmer, an attorney representing Bush’s mother, said the new
autopsy finding bolsters a civil lawsuit he plans to file in the near future.
 
“If it’s ruled they have killed someone before and they did not take steps
to address the circumstances under which that person was killed, that
just shows that they’re not addressing the problem,” Collmer said.

These were the only parts of the articles referring to or attributable to Collmer.

          On September 27, 2002, Collmer filed suit against Daystar and Behavior
Training Research, seeking damages for Bush’s death. On November 8, Daystar and
Shiloh initiated a business disparagement suit against Collmer based on his
statements to the newspapers. Collmer answered their suit with a general denial on
December 11. Daystar and Shiloh initiated the discovery process in their suit against
Collmer by filing requests for disclosure on December 18 and a request for
production of documents on December 26. Collmer objected to this discovery, based
on work product privilege and lawyer client privilege. Daystar and Shiloh then filed
a motion to compel discovery on February 10, 2003. On February 13, Collmer filed
suit against Shiloh and Daystar, seeking damages for the death of Duffield. On
February 24, Collmer amended his original answer in the business disparagement suit,
claiming immunity and absolute privilege. Collmer also filed a motion for summary
judgment and a response to plaintiff’s motion to compel on this date, both asserting
that he was immune from suit because his statements were absolutely privileged. The
trial court granted Collmer’s motion for summary judgment.DISCUSSION
          In reviewing a summary judgment, we must indulge every reasonable inference
in favor of the nonmovant and resolve any doubts in its favor. Randall’s Food Mkts.,
Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995); Lawson v. B Four Corp.,, 888
S.W.2d 31, 33 (Tex. App.—Houston [1st Dist.] 1994, writ denied). We will take all
evidence favorable to the nonmovant as true. Id. As movant, the defendant is entitled
to summary judgment if the evidence disproves as a matter of law at least one element
of each of the plaintiff’s causes of action. Lear Siegler, Inc. v. Perez, 819 S.W.2d
470, 471 (Tex. 1991); Marchal v. Webb, 859 S.W.2d 408, 412 (Tex. App.—Houston
[1st Dist.] 1993, writ denied). A defendant moving for summary judgment on an
affirmative defense must establish that defense as a matter of law. Long Distance
Int’l Inc. v. Telefonos de Mexico, 49 S.W.3d 347, 350-51 (Tex. 2001).
I. Absolute Privilege: Newspaper RemarksAppellants, in their first issue presented for review, contend that summary
judgment should not have been granted for Collmer based on the doctrine of absolute
privilege of judicial immunity because his comments were made prior to the filing of
the lawsuit against Shiloh and Daystar and were published in newspapers.
          Communications made in the due course of a judicial proceeding will not serve
as the basis of a civil action for libel or slander, regardless of the negligence or malice
with which they are made. James v. Brown, 637 S.W.2d 914, 916 (Tex. 1982). This
privilege extends to any statements made by the judges, jurors, counsel, parties, or
witnesses and attaches to all aspects of the proceedings, including statements made
in open court, pre-trial hearings, depositions, affidavits, and any of the pleadings or
other papers in the case. James, 637 S.W.2d at 916-917. The privilege not only
extends to statements made during litigation, but also to statements made in
contemplation of and preliminary to judicial proceedings. See Watson v. Kaminski,
51 S.W.3d 825, 827 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (holding that
letter alleging that prisoner was trying to extort money from appellants and that he
was likely to be sued if he attempted to do so came within judicial privilege, even
though no litigation was pending). To be privileged, the communication must bear
some relationship to pending or proposed litigation and must further the attorney’s
representation. Id.; but see Bell v. Lee, 49 S.W.3d 8, 11 (Tex. App.—San Antonio
2001, no pet.) (privilege attaches if statement has some relationship to contemplated
proceeding, whether or not it actually furthers representation). Whether an alleged
defamatory communication is related to a proposed or existing judicial proceeding
is a question of law. Thomas v. Bracey, 940 S.W.2d 340, 343 (Tex. App.—San
Antonio 1997, no writ). When deciding the issue, “the court must consider the entire
communication in its context, and must extend the privilege to any statement that
bears some relation to an existing or proposed judicial proceeding.” Russell v. Clark,
620 S.W.2d 860, 870 (Tex. Civ. App.—Dallas 1981, writ ref’d n.r.e.). All doubt
should be resolved in favor of the relevancy of the statement. Id.
          The judicial-proceeding privilege has been applied to letters written by lawyers
to potential defendants prior to suit. Watson, 51 S.W.3d at 827-28; Krishnan v. Law
Offices of Preston Henrichson, P.C., 83 S.W.3d at 301, 302 (Tex. App.—Corpus
Christi 2002, pet. denied); Crain v. Smith, 22 S.W.3d 58, 62-63 (Tex. App.—Corpus
Christi 2000, no pet.). In those cases involving statements made before suit was filed,
the communications were clearly made in furtherance of the attorney’s representation
of his client, e.g., demand letters sent to the defendants, documents filed with quasi-judicial bodies, or documents constituting notice as required by law. The judicial-proceeding privilege has also been applied to the delivery of pleadings in pending
litigation to the news media after the suit is filed. Hill v. Herald Post Publ’g Co.,
Inc., 877 S.W.2d 774, 782-84 (Tex. App.—El Paso 1994), rev’d in part on other
grounds, 891 S.W.2d 638, 639 (Tex. 1994). Just as the mere delivery of pleadings
in pending litigation to the news media does not amount to publication outside of the
judicial proceedings that would result in waiver of the absolute privilege, a press
release advising the media that a lawsuit has been filed, including a basic description
of the allegations, does not amount to publication outside of the judicial proceedings
resulting in a waiver of the absolute privilege. Dallas Indep. Sch. Dist. v. Finlan, 27
S.W.3d 220, 238-40 (Tex. App.—Dallas 2000).
          Appellants assert that the concept of absolute privilege because of judicial
immunity in Texas has never been extended to statements made in newspapers at
some point before a judicial proceeding is actually filed. They are correct. However,
as this court stated in Watson, the privilege extends to statements made in
contemplation of and preliminary to suit. Watson, 51 S.W.3d at 827. While the suit
had not been filed in this case, it is clear that a suit was being contemplated and that
Collmer’s statements were based, in part, on his beliefs of how the new information
would affect his suit. That his statements were made before the actual filing of the
suit has no bearing on whether they are protected by judicial privilege. The only
factors are whether his statements bore some relationship to the proposed litigation
and furthered his representation of his client, regardless of the time when they were
made.
          Collmer’s statements bore some relationship to proposed litigation and could
further his representation of his client. He was remarking on circumstances which
were similar to those of his client and referenced them to the case that he planned to
file in the near future. Considering the entire communication in its context, we hold
that these statements fall within the absolute privilege of judicial immunity. We
overrule appellants’ first issue.II. Absolute Privilege: Statements Referencing Shiloh
          In the second issue presented for review, appellants argue that the doctrine of
absolute privilege because of judicial immunity should not apply to Collmer’s
statements regarding appellant Shiloh, because Shiloh is a non-party to the Latasha
Bush lawsuit.



          Collmer made his comments in the newspapers as the attorney for Bush’s
mother. His comments were quoted in articles about a potential investigation into the
1993 death of a 16-year-old patient at a different Behavior Training Research facility. 
Although the articles name Shiloh as a facility in which an accidental death occurred
in 2000, Collmer did not name Shiloh in his comments to the newspapers; he stated
only that the new autopsy findings in the 1993 death might bolster the civil lawsuit
he planned to file in the near future. 
          Our resolution of issue one leads us to conclude that if these statements did,
somehow, remark upon Shiloh, they are also protected under the doctrine of judicial
immunity because they bear some relationship to the proposed Bush litigation.
Watson, 51 S.W.3d at 827; see also Krishnan, 83 S.W.3d at 302-303 (holding that
when attorney sent pre-suit notice letter to two doctors and medical center, but later
only sued one doctor and medical center, the other doctor could not sue in defamation
action because absolute privilege applied, absent an indication that the attorney had
decided not to sue him before the letter was sent). 
          We overrule appellant’s second issue.
 
III. Discovery
          In appellants’ third issue presented for review, they assert that the trial court
erred by refusing appellant’s request for discovery before ruling upon appellee’s
amended motion for summary judgment. Appellants argue that the trial court should
have compelled and allowed discovery before granting summary judgment so that
facts necessary to test components of judicial immunity, such as whether Collmer was
contemplating a suit against Shiloh and the context of the newspaper articles could
be revealed.
          Whether an alleged defamatory communication is related to a proposed or
existing judicial proceeding is a question of law. Thomas, 940 S.W.2d at 343. In
judicial immunity cases, there are multiple components to the absolute privilege: the
communication must bear some relationship to a judicial proceeding; the attorney
must be employed for that proceeding; and the communication must be in furtherance
of that representation. Helfand v. Coane, 12 S.W.3d 152, 158 (Tex. App.—Houston
[1st Dist.] 2000, pet. denied). Thus, determining whether a communication is
absolutely privileged under Russell requires sufficient discovery. Watson, 51 S.W.3d
at 827. 
          The statements at issue in this case were made by Collmer and published in
newspapers. The newspaper articles were included in the record and available to the
trial court. In this case, unlike Helfand, there is no dispute regarding the publication
of the articles or the facts surrounding the statements. It is uncontested that Collmer
was retained to represent Bush’s mother. It is clear from the articles that Collmer was
discussing a proposed judicial proceeding and that his comments were in furtherance
of that representation. Thus, the evidence was sufficient to establish the Helfand
components, and there was no need for further discovery. See Clawson v. Wharton
County, 941 S.W.2d 267, 273-74 (Tex. App.—Corpus Christi 1996, writ denied)
(holding that there is no error in refusing to continue a summary judgment hearing for
further discovery when the discovery sought is immaterial to the motion at issue). 
We hold that the trial court did not abuse its discretion by denying appellant’s motion
to compel further discovery. 
          We overrule appellants’ third issue.CONCLUSION
          We affirm the judgment of the trial court. 
 
 
                                                             Sam Nuchia
                                                             Justice
 
Panel consists of Justices Nuchia, Alcala, and Hanks.